**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MATTHEW GALUNAS,**

                          **Plaintiff,**

vs.                                            **8:11-cv-14
(MAD/RFT)**

**DETECTIVE ROBERT REYNOLDS, Ulster
County Police Department; and BRIAN
ROBERTSON, Detective, Ulster County Police
Department,**

                          **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**MATTHEW GALUNAS
09-B-3231**
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929
Plaintiff *pro se*

**SHANTZ & BELKIN**                            **DEREK L. HAYDEN, ESQ.**
26 Century Hill Drive
Suite 202
Latham, New York 12110
Attorneys for Defendant Reynolds

**COOK, NETTER, CLOONAN,**             **ERIK M. KURTZ, ESQ.**
**KURTZ & MURPHY, P.C.**
85 Main Street
P.O. Box 3939
Kingston, New York 12402
Attorneys for Defendant Robertson

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On January 6, 2011, Plaintiff commenced this civil rights action alleging that Defendants violated his constitutional rights. *See* Dkt. No. 1. Currently before the Court are Defendants'

motions for summary judgment. *See* Dkt. Nos. 26, 28.

## II. BACKGROUND

In his complaint, Plaintiff alleges that, "[o]n February 26, 2008, [upon] exiting my home at 25 Park Drive, Woodstock, NY 12491, various personnel from a multi-agency Task Force, composed of Ulster and Kingston County police officers, absent a warrant, effectuated my arrest based upon allegations of Criminal Sale of Controlled Substance(s)." *See* Dkt. No. 1 at 4.[1] Plaintiff claims that, upon exiting his home, he complied with the officers commands to drop to the ground and to place his arms behind his back. Plaintiff alleges that, despite his compliance, Defendant Robertson, without an arrest warrant, placed him in handcuffs, "ramm[ed] his knee in [his] rib cage while [Defendant] Re[y]nolds smashed [him] with his tazer gun." *See* Dkt. No. 35-4 at ¶ 4. After this alleged altercation, Plaintiff claims that, because of the pain he was suffering, he was unable to stand up. *See id.* at ¶ 5. When Plaintiff failed to stand, he claims that he was "dragged" across his yard and then "yanked . . . up while handcuffed behind [his] back" by Defendant Reynolds, who then continued to assault him. *See id.* Plaintiff alleges that several officers observed this alleged assault and only eventually intervened for fear of who may be watching. *See* Dkt. No. 35 at ¶ 3.

As a result of this alleged assault, Plaintiff asserts that he now suffers from "diffused discs L4-L5 L5-S1." *See id.* Moreover, although Plaintiff admits that he suffered from "minor bulging discs" prior to February 26, 2008, he claims that Defendants' use of excessive force caused his previous condition to worsen, leaving him with permanent disabilities. *See id.* Plaintiff further

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

alleges that, after the incident, he "was unable to walk without being helped" and that the attack left the entire right side of his face bruised, including a laceration. *See id.* at ¶ 7. Plaintiff claims that, despite his compliance, he was "hit in the side of the head two times with the 'Tazor Gun' and one time with Det. Reynolds 'Service Revolver.'" *See id.* Although Defendants do not dispute that some force was used while arresting Plaintiff, they contend that it was a reasonable amount of force in light of the fact that Plaintiff was not complying with their commands and because Plaintiff had evaded arrest the day before by fleeing from them. Defendants further contend that once Plaintiff was subdued and placed in handcuffs, they did not strike him or employ any additional force.

Shortly after his arrest, Plaintiff was evaluated by medical personnel at the Ulster County Jail. *See* Dkt. No. 28-5 at Exhibit "G." Plaintiff complained of lower back pain but the medical notes indicate that, upon exiting the vehicle, he was able to put equal weight on both legs, was ambulatory, and was not limping. *See id.* at 10. Moreover, the medical notes indicate that there were no bruises, swelling or redness present on Plaintiff's back, but that he had a "contusion" to the area above his right eye. *See id.* Moreover, the notes indicate that Plaintiff was alert and that he denied losing consciousness at any point. *See id.* Although Plaintiff claims that he had a "gaping wound" above his right eye, the notes indicate that it was merely a "superficial scratch" with only slight swelling and bruising. *See id.*

On February 28, 2008, Plaintiff was sent to Benedictine Hospital, where it was observed that he was ambulatory but still complaining of back pain. *See* Dkt. No. 28-5 at Exhibit "H." Plaintiff informed the medical staff that he "has a history of nonspecific low back pain" and that he did not lose consciousness during or after the event. *See id.* at 16. Upon review of a CAT scan, it was determined that Plaintiff "had disk herniation L4-L5 and L5-S1" and the "clinical

3

impression" was that his lower back pain was "secondary to disk disease." *See id.* at 17; *see also id.* at 18-19 (providing the specific findings of the radiology consultation).

On January 6, 2011, Plaintiff commenced this civil rights action alleging that Defendants violated his Eighth Amendment rights. *See* Dkt. No. 1 at 6. Currently before the Court are Defendants' motions for summary judgment. *See* Dkt. Nos. 26, 28.

## III. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.

4

*See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 303 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Relief under 42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent

5

damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

**C.**     **Personal involvement**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (internal quotation and citations omitted). "'[W]hen monetary damages are sought under § 1983, the [] doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id*. (quotation omitted). There is a sufficient showing of personal involvement of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

**D.     Excessive force**[2]

Claims that a law enforcement officer used excessive force in the course of making an arrest are "analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (holding that "a claim of 'excessive force in the course of making [a] . . . "seizure" of [the] person . . . [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard'" (quotation omitted)); *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quotations and other citation

---

[2] Although Plaintiff claims that Defendants violated his Eighth Amendment rights, because the complained of conduct occurred while Defendants were effecting Plaintiff's arrest, it is clear that his claim is properly brought under the Fourth Amendment. *See Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 581 (2d Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). As such, in light of Plaintiff's *pro se* status, the Court will treat Plaintiff's excessive force claim as arising under the Fourth Amendment and deny Defendant Reynolds' suggestion that the Court should dismiss Plaintiff's complaint because of this mistake. *See* Dkt. No. 28-7 at 3.

omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Proper application of the Fourth Amendment's "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Terranova*, 676 F.3d at 308; *Tracy*, 623 F.3d at 96.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy*, 623 F.3d at 96. However, allegations that an "officer twisted [the plaintiff's] arm, 'yanked' her, and threw her up against a car, causing only bruising" have been held to be sufficient to survive summary judgment. *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (citing *Robison v. Via*, 821 F.2d 913, 924–25 (2d Cir. 1987)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the

8

amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *see also Tracy*, 623 F.3d at 96; *Jones*, 465 F.3d at 61 (citation omitted). "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Jones*, 465 F.3d at 61. "Given the fact-specific nature of the [objective reasonableness] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted).

In the present matter, although questions of fact preclude the Court from granting Defendant Reynolds' motion for summary judgment on this ground, the undisputed evidence shows that Defendant Robertson was not present during the alleged attack and, therefore, that he was not personally involved. Specifically, Defendant Robertson contends that while several members of the task force traveled to Plaintiff's home, he proceeded to the Town of Hurley Justice Court to obtain a warrant for Plaintiff's arrest. *See* Dkt. No. 26-5 at ¶ 7. After Defendant Robertson obtained the arrest warrant, he radioed to the officers at the scene to advise them that the arrest warrant had been issued. *See id.* at ¶¶ 8-9. Due to heavy snowfall on February 26, 2008, it took Defendant Robertson approximately ten (10) minutes to travel to Plaintiff's residence. *See id.* at ¶ 10. By the time Defendant Robertson arrived at the scene, Plaintiff had already been placed in handcuffs and was being escorted across the front lawn by Defendant Reynolds. *See id.* at ¶ 11. According to Defendant Robertson's affidavit, the only contact he had with Plaintiff was to hold "on to one of [his] arms to keep him standing upright and position him

9

next to the vehicle as officers at the scene awaited a patrol vehicle to pick [him] up and transport him for processing." *See id.* at ¶ 11.

Defendant Robertson's account of the events at issue is corroborated by Defendant Reynolds and Eric Paulding, a detective for the City of Kingston Police Department, who is not a party to this action. *See* Dkt. No. 28-6 at ¶ 11; Dkt. No. 26-6 at ¶¶ 5-6. Specifically, Detective Paulding states that he was on the scene during the arrest and provided "cover" to Defendant Reynolds during the arrest process. *See* Dkt. No. 26-6 at ¶ 4. Detective Paulding further states that Defendant Robertson was not at the scene while Plaintiff was being arrested. *See id.* at ¶ 5. Defendant Reynolds also confirms that Defendant Robertson was not present during the arrest because he was en route from having obtained the arrest warrant. *See* Dkt. No. 28-6 at ¶ 11.

Although Plaintiff contends that Defendant Robertson was there and participated in the alleged use of force, the uncontroverted evidence establishes that he was not. Although Defendant Robertson does admit that he assisted in escorting Plaintiff across the yard by holding his arm, no reasonable trier of fact could find that such contact amounted to an unreasonable use of force. Finally, a review of Plaintiff's affidavit in opposition to Defendant Robertson's motion for summary judgment makes clear that the only specific factual allegations concerning excessive force involve Defendant Reynolds, not Defendant Robertson. *See* Dkt. No. 35-7.[3]

Based on the foregoing, the Court grants Defendant Robertson's motion for summary judgment.

---

[3] As is discussed in more detail below with regard to Defendant Reynolds' motion for summary judgment, although the Court should not usually engage in credibility determinations when deciding a motion for summary judgment, since Plaintiff's evidence against Defendant Robertson is comprised of almost exclusively his own allegations, which are controverted by other evidence in the record, including the testimony of a non-party, the Court may appropriately judge the credibility of Plaintiff's account in determining whether a jury could reasonably find for Plaintiff. *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005).

As to Defendant Reynolds, however, issues of fact exist which preclude the Court from granting his motion. Although Defendant Reynolds is correct that Plaintiff had a preexisting back condition, in an excessive force case, a plaintiff may recover damages for the aggravation of a preexisting injury caused by the use of excessive force. *See Ramos v. Samaniego*, No. 07-CV-320, 2008 WL 3539252, *6 n.8 (W.D. Tex. July 24, 2008) (citing *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996)). Although Defendant Reynolds is correct that Plaintiff has contradicted himself on several occasions regarding the severity of his injuries, Plaintiff's inconsistent statements are more appropriately addressed by a jury since they concern Plaintiff's credibility.

Defendant Reynolds argues that the Court should grant his motion because "no reasonable person would undertake the suspension of disbelief necessary to give credit to the plaintiff's allegations[.]" *See* Dkt. No. 28-7 at 6 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)). Specifically, Defendant Reynolds argues that the Court should apply the exception set forth in *Jeffreys*, which allows the Court to make a credibility determination that would normally be made by the jury because of contradictions that Plaintiff has made and the lack of corroborating evidence. *See id.* at 6-7.

Although Plaintiff has contradicted himself on several occasions regarding the severity of the attack and his injuries, Plaintiff's versions of the events underlying this action are far less contradictory than those at issue in *Jeffreys* and in the cases cited by Defendant Reynolds. In *Jeffreys*, the plaintiff alleged in his complaint that police officers beat him and threw him out a window. *See Jeffreys*, 426 F.3d at 551. Before filing the complaint, he confessed on at least three occasions that he had jumped out of the window rather than having been thrown. *See id.* at 552. Further, the plaintiff first alleged that police officers threw him out of the window approximately nine months after the incident. *See id.* The plaintiff could not identify any of the individuals

11

whom he alleged participated in the attack or describe their ethnicities, physical features, facial hair, weight, or clothing on the night in question. *See id.*

Affirming the district court's decision granting the defendants' motion for summary judgment, the Second Circuit held that "[w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Id.* at 554 (internal quotation marks and citation omitted).

In the present matter, the Court is not persuaded that the exception set forth in *Jeffreys* should be applied as to Defendant Reynolds. Unlike the situation in *Jeffreys*, Plaintiff has consistently maintained that Defendant Reynolds used excessive force while effecting his arrest. Moreover, Defendant Reynolds admits that force was used while placing Plaintiff in handcuffs because he was uncooperative; Defendant Reynolds simply maintains that the force used was not excessive and was reasonable in light of the circumstances. Further, it is uncontested that Plaintiff suffered a laceration during the arrest; the severity of which is dependent entirely on whose testimony you credit. Moreover, Plaintiff contends that even after he was placed in handcuffs, he was subjected to further assault, including being "yanked" up while his hands were handcuffed behind his back, which caused him to feel as though his "arms were going to be ripped out of the sockets[.]" Also, while Detective Paulding does contend that Plaintiff was non-compliant during the arrest, he does not state his opinion as to whether the force Defendant Reynolds' used was reasonable and necessary. *See* Dkt. No. 26-6.

Finally, Plaintiff was seen by medical personnel immediately upon arrival at the prison and was taken to Benedictine Hospital two days after his arrest. Although the medical records do make clear that Plaintiff has suffered from chronic back issues since at least 2004, it is unclear whether the L4-L5 and L5-S1 disk herniations he was diagnosed with immediately following his arrest are the result of force used during the arrest, if the condition was exacerbated by any force that was used, or if the condition was entirely preexisting and not impacted in any way by the force that was employed. *See* Dkt. No. 28-5 at Exhibit "H." Whether Defendant Reynolds used reasonable force in subduing Plaintiff and the extent of Plaintiff's injuries, if any, all require credibility determinations that must be resolved by the jury. *See Dallio v. Santamore*, No. 9:06–CV–1154, 2010 WL 125774, *9 (N.D.N.Y. Jan. 7, 2010) (holding that because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied where the plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by the defendants, notwithstanding the relatively minor injuries that the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, No. 9:08–CV–431, 2010 WL 1063875, *7–8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on the plaintiff's claim that the defendant hit him several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that the plaintiff suffered only a minor bruise).

Based on the foregoing, the Court finds that questions of fact exist which preclude the Court from granting Defendant Reynolds' motion for summary judgment.

**E.     Qualified immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612, F.3d 149, 165 (2d Cir. 2010) (citations omitted).  "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . .  That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could

14

disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that . . . it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

In the present matter, Defendant Reynolds contends that, on February 25, 2008, Plaintiff evaded arrest by fleeing from police, "driving in the wrong lane at 100 mph, forcing at least one motorist off the road and narrowly missing several police vehicles." *See* Dkt. No. 28-2 at ¶ 1. When Defendant Reynolds attempted to arrest Plaintiff on the following day, he claims that Plaintiff "ignored at least five shouted orders to put his hands up and to get down on the ground."

15

*See id.* at ¶ 4.  At this point, Defendant Reynolds contends that he pushed Plaintiff to the ground from behind.  *See id.* at ¶ 5.  Defendant Reynolds claims that Plaintiff only sustained a "small scrape near his right eye during his arrest[,]" and that there was no bruising, swelling or redness on Plaintiff's back.  *See id.* at ¶¶ 6, 17.  Further, Defendant Reynolds claims that he "never put [his] knee into [Plaintiff's] back or jumped onto his back during his arrest or while he was in custody."  *See* Dkt. No. 28-6 at ¶ 12.  Finally, Defendant Reynolds asserts that did not strike Plaintiff with either a Tazer gun or revolver during the incident in question.  *See id.* at ¶ 14.

Plaintiff, on the other hand, has repeatedly asserted that he obeyed all commands while Defendant Reynolds was attempting to place him under arrest.  *See* Dkt. No. 35-3 at ¶ 9.  Despite his compliance, Plaintiff claims that Defendant Reynolds "brutally attacked" him until fellow officers ordered him to stop.  *See id.*  Further, Plaintiff claims that Defendant Reynolds then dragged him across the yard, told him that "he oughta put a bullet in [his] . . . head and do everybody a favor," and then struck him in the head with a weapon.  *See id.*  Plaintiff claims that he was never charged with resisting arrest as proof that he complied with Defendant Reynolds' orders.  *See id.* at ¶ 12.  Although Plaintiff's version of events may have slightly varied throughout the course of this litigation, unlike the situation in *Jeffreys*, he has consistently alleged that he was subjected to these incidents without provocation, including leading up to and during his criminal trial.

In light of the drastically different account of what occurred on February 26, 2008, the Court finds that questions of fact exist which preclude granting Defendant Reynolds' motion at this time.  For the Court to find that Defendant Reynolds is entitled to qualified immunity, it would have to engage in improper credibility determinations, which it is unwilling to do.  Taking Plaintiff's version of events as true, only a *de minimis* amount of force would have been required

16

to effect his arrest, yet Defendant Reynolds is alleged to have applied considerably more force in both effecting the arrest and after Plaintiff was placed in handcuffs. These questions of fact are material to the reasonableness of the force used and the question of qualified immunity and, therefore, must be decided by a jury. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (reversing grant of qualified immunity on excessive force claim where facts were disputed as to allegations that the defendant officer jumped on the plaintiff's back, yanked his head and neck, pushed his face into a table, intentionally tightened his handcuffs, and hit him); *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir. 1989) (holding that qualified immunity on excessive force claim was a question for the jury, where the defendant officer shoved the plaintiff to floor, the handcuffs were unduly tight, and the plaintiff was left in an uncomfortable position for several hours); *Robison v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that summary judgment was inappropriate where the parties disputed material facts regarding the plaintiff's allegations that she was pushed against a car, yanked out, thrown against the fender, and had her arm twisted behind her back).[4]

---

[4] In his reply to Plaintiff's opposition to the motion for summary judgment, Defendant Reynolds argues that the Court should deem as admitted all statements in his statement of material facts because of Plaintiff's failure to comply with the requirements of Local Rule 7.1(a)(3). *See* Dkt. No. 39 at 3. Although Defendant Reynolds is correct that Plaintiff failed to strictly comply with Local Rule 7.1's requirements and that the Court may deem as admitted all of the statements in Defendant Reynolds' statement of material facts that have not been specifically controverted, the Court declines to do so. In his response to Defendant Reynolds' motion for summary judgment, Plaintiff makes specific reference to documents in evidence, including the medical records and his deposition transcript. While the Court is not required to ignore violations of Local Rule 7.1 simply because Plaintiff is proceeding *pro se*, the Court will not turn a blind eye to evidence in the record that creates material issues of fact.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Reynolds' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendant Robertson's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 28, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge